### Moses Call *versus* Ezekiel W. Barker & al.

If the breach of the condition of a poor debtor's bond be caused by the omission to appraise a note, disclosed on the examination, the amount of damages, under the statute of 1848, c. 85, § 2, is not to be limited to the value of the note; but any legal proof, going to show the ability of the debtor to have paid the debt, or some part thereof, is admissible, and should be taken into consideration by the jury in the assessment of damages.

This case came before the Court on exceptions, of which a copy follows: —

" S. J. Court, Sept. Term, 1848, adjourned session, Jan. 1849.

" Writ dated 10th Oct. 1846. The action is debt on a poor debtor's bond dated 23d Sept. 1845, penal sum, $134,94, and given pursuant to statute, to release Barker, the principal therein, from arrest on execution, in favor of plaintiff.

" The defendants plead the general issue, with a brief statement that one of the alternative conditions of the bond, to wit, duly citing the creditor, and taking the oath referred to in said bond, by said Barker, the principal therein, had been performed.

" The execution of the bond by defendants was admitted, and it was read.

" The defendants introduced and read the original application and citation of said Barker; and also the certificate of discharge given by the two justices of the peace and of the quorum, for said county, which was also read, the execution thereof having been proved by the justices aforesaid; one of whom at plaintiff's request, produced the written disclosure of said Barker made before them, and whereon he was by them admitted to the oath in the certificate named, which disclosure is made a part of the case.

" The plaintiff contended, that the justices aforesaid were not authorized to make out and deliver the aforenamed certificate of discharge, the note disclosed by the said Barker, in his answer to the 6th interrogatory of said disclosure, not having been appraised and assigned as the statute requires; and the presiding Judge so ruled, unless some legal excuse for the omission should be shown.

" Whereupon the defendants called one of the justices aforesaid, and the debtor's attorney in making his disclosure, to show, that at the time the debtor made his disclosure, the creditor's attorney, in the examination, declined to receive an assignment, and that the omission to assign would not have happened, but for the course pursued by the creditor's attorney. By assignment said attorney testified, he meant an assignment under the statute, a statute assignment.

" The plaintiff puts in the case attested copies of the judgment on which the execution issued, and of the execution and officer's return thereon, which may be referred to without copying.

" It was further contended by plaintiff, that the justices were not authorized to make out and deliver said certificate of discharge, " until the books and debts due Barker & Chapman," which were assigned to Clapp & Curtis & als. to pay the debt of $1600, (named in the debtor's answer to the 3d interrogatory,) had been appraised and assigned, subject to the said assignment to " Clapp & Curtis & als." or until the debtor had assigned the claim which he, or Barker & Chapman had against said Clapp & Curtis & als., for the amount that had

been or might be realized by them from the "books and debts" aforesaid, after they (the said assignees) should be paid.

" And further, before said certificate could be legally delivered to said debtor, the account against his mother, disclosed in his answers to the 7th and 8th interrogatories, in said disclosure ; and also his account against his mother, " as her agent," should have been appraised and assigned as required by Rev. Stat. c. 148, § 29.

" That the oath was illegally administered by said justices, because the debtor neglected and refused to answer pertinent interrogatories, and which by law he was bound to answer.

" The presiding Judge ruled otherwise as to all these several matters of law, contended for by the plaintiff.

" The plaintiff further contended, in case the jury should find the condition of the bond had been broken by the non-assignment of the note disclosed, (by answer to the 6th interrogatory,) he should have damages as the statute had provided by § 39 of c. 148 of the Revised Statutes. But the Judge permitted the jury, (at the defendant's request,) to assess the damages under the provision of section 3d of an act entitled " An act additional for the relief of poor debtors," approved August 11, 1848; to which the plaintiff objected, the plaintiff's right having accrued before the passage of said last named statute.

" The defendants called several witnesses, plaintiff still objecting, to prove that at or about the time of the disclosure, the promisor in said note disclosed, was generally considered to be possessed of no property whatever, and that in the opinion of the witnesses, a demand of $30 would then have been considered of little or no value, and that many executions were outstanding against Pickard, and that he was then residing out of the State.

Plaintiff offered in evidence the deposition of D. L. Pickard. The defendants objected to the use of it on the ground that Pickard had been in attendance before the case came on for trial, and had been summoned by plaintiff, and had been suffered to depart without the knowledge of defendants : but the

objection was overruled and the deposition was read, and is made a part of the case and may be referred to by either party without copying.

" As matter which the jury might take into consideration in assessing damages, the plaintiff offered witnesses tending to show, as he contended, that at the time Barker made his disclosure, he was possessed of property and credits, and had means that were concealed, and was the owner of or had a valuable interest in the house he then occupied and has continued to occupy to this time. But the Judge excluded the testimony.

" And for the same purpose the plaintiff read copies of two disclosures made subsequently to the time of making the disclosure before named, for the purpose of showing that at the time of making the first disclosure, Mrs. Small, his mother, was indebted to the said Barker in a considerable amount, and that at the time of the first disclosure the said Barker had other means; which said copies are made a part of the case and may be referred to without copying.

" The writ, bond, pleadings, application and citation, and officer's return thereon, certificate of discharge, copies of judgment and execution, and officer's return thereon are made part of the case and may be referred to by either party without copying.

" The Judge instructed the jury, if they should find that at the time of Barker's disclosure, in this case, the debtor or the justices omitted to cause the note against Pickard to be appraised and assigned by reason of the creditor or his attorney expressly waiving all right to have the same appraised or assigned; or, by reason of being led by the creditor or his attorney into an illegal course of proceeding in making such disclosure; or was induced by the creditor or his attorney to make the supposed omission in their proceedings; in either case, the plaintiff would not be entitled to recover by reason of the neglect or omission to appraise said note.

But if they should find that the conditions of the bond have been broken, they should in assessing the damages ascertain how much the Pickard note was worth at the time of the disclos-

ure, and so much as it was then worth, and all damages to the plaintiff by reason of not appraising and assigning said note, would be the measure of damages the plaintiff had sustained and would be entitled to recover.

"That the testimony of witnesses which had been introduced by plaintiff, as to Barker's property, or supposed means, concealed; or as is shown, as plaintiff contends, by subsequent disclosures; or whether or not he now has property; or made a false disclosure; are matters which cannot in the least aggravate or affect the damages which the plaintiff is entitled to recover in this action.

"The jury found that the writing declared on, was the deed of the defendants; that the conditions thereof have been broken; but they further find, that the plaintiff sustained no damage by such breach.

"To the foregoing rulings and instructions of the Judge the plaintiff excepts. By, &c."

3d interrogatory. "What personal property did you own in 1841? What in 1842? What in 1843? Please state particularly all in which you had any interest.

Answer. "I do not recollect sufficient to answer the above question. I have now no recollection as to property in 1841, other than some articles of household furniture exempted by law from attachment, and some debts due me for work and labor done, all of which have long since been paid me.— In 1842, I went into partnership with Hiram Chapman, went into trade, and we failed in business in 1843, in May, I think.— During that time we bought goods and sold them, and during the same time we bought one-eighth of the ship Archelaus. which was afterwards sold. At the time we failed, we owed. towards the said one-eighth about 1600 dollars — and after the failure, we assigned our books and debts due us to Clapp & Curtis and als. to pay same debt.— At the time of the fire last spring I understood that all the books and papers thus assigned were burnt.

4th. "What amount in debts (notes and accounts) had the

firm of Barker & Chapman at the time of failure as aforesaid, as well as you are able to judge ?

Answer. " I believe there were no notes. I have no means of ascertaining the amount of accounts due us — the books having been burnt, and I kept no memorandum of the accounts, when I assigned the books.

5th. " Please state what demands of any nature, notes or accounts, you now have against any person, or in which you have any interest.

Answer. " I know of none, except a note against Daniel S. Pickard of about 30 dollars, the same being now in an attorney's hands for collection, in Boston. It is, however, of little or no value, and I hereby offer to assign the same to creditor, if he deems it to be of any value.

6th. " Have you any account on your books with your mother ? If so, please exhibit the same.

Answer. " I have no demand against my mother. I have an account against her, however, which is in part payment of a note she holds against me. I have not the account here.

7th. " What is the amount of the notes, when given, when and how payable, how much due thereon ? What is the amount of your account, the nature of it ? Please state as nearly as you can.

Answer. " The note referred to was given in 1842, I think, for about $120 and interest, payable on demand, in joiner work. I am not able to state the balance due her on said note, but should think it was over $20. I should think the amount of the account referred to is about $100. It may not amount to that sum."

*W. Hubbard,* for the plaintiff. In support of his exceptions the plaintiff submits the following points on which he will rely in his argument.

The certificate of discharge was not legally granted, because the principal did not cause to be assigned or appraised the demands by him disclosed, as is particularly named in the bill of exceptions. That is to say : —

1st. The debts due Barker & Chapman on their books, assigned to " Clapp & Curtis & als."

2d. Also Barker's account against his mother, and

3d. Also his account against his mother, "as her agent." Rev. St. c. 148, § 29, 30 and 31.

The oath was illegally administered, the principal declining and refusing to answer legal and pertinent interrogatories. *Stone* v. *Tilson,* 19 Maine R. 265.

The ruling of the presiding Judge was therefore erroneous.

The testimony of witnesses and the disclosures of Barker were legal evidence for the jury to take into consideration in assessing damages. The jury should not have been limited to the value of the Pickard note, as appears by bill of exceptions. Statute of 1848.

The jury having found a breach of the conditions of the bond, judgment should have been rendered agreeably with c. 148, § 39, of Rev. Stat.

The statute of 1848, cannot operate in this case, the plaintiff's right to recover, under § 39 of c. 148, being *vested.*

*Ingalls,* for the defendants. The defendants make the following points, viz : —

1. The instruction to the jury by the presiding Judge in relation to the not appraising and assigning the note of D. L. Pickard, disclosed in answer to the 6th interrogatory, was correct. Opinion of Court in *Call* v. *Barker,* 27 Maine R. 97.

2. The books and debts assigned by Barker & Chapman, as mentioned in the answer to the 3d interrogatory, to Clapp & Curtis, were assigned in *payment* of their demand. Therefore no assignment ought or could be made.

3. There was no account due Barker from his mother as appears in his answer to the 10th interrogatory.

4. The debtor answered all proper and pertinent interrogatories as fully as he could or was bound to do.

5. The damages were properly left to the jury. Stat. of 1848, c. 85, § 2.

6. This act is constitutional and affects the remedy in this case. *Read* v. *Frankfort Bank,* 10 Shepl. 318; *Thayer &*

*al.* v. *Sevey,* 2 Fairf. 284; *Oriental Bank* v. *Freeze,* 18 Maine R. 109; *Whitman* v. *Hapgood,* 13 Mass. R. 464; *Fales & al.* v. *Wadsworth,* 10 Shepl. 553; *Bacon* v. *Callender,* 6 Mass. R. 303; *Patterson* v. *Philbrook & als.* 9 Mass. R. 151; *Walter* v. *Bacon,* 8 Mass. R. 468; *Locke, Adm'r,* v. *Dane & al.* 8 Mass. R. 360; *Commonwealth* v. *Bird,* 12 Mass. R. 443; *Brown* v. *Penobscot Bank,* 8 Mass. R. 445; *Foster* v. *Essex Bank,* 16 Mass. R. 245; *Potter* v. *Sturtevant,* 4 Greenl. 154; *Proprietors of side booms in Androscoggin River* v. *Haskell,* 7 Greenl. 174; *Holbrook* v. *Phinney,* 4 Mass. R. 566; *Morse* v. *Rice,* 8 Shepl. 53; *Watson* v. *Mercer,* 8 Pet. 110; *Satterlee* v. *Mathewson,* 2 Pet. 414; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; *Reed* v. *Fulham,* 2 Pick. 158; *Mason* v. *Haile,* 12 Wheat. 377; *Commonwealth* v. *Wyman,* Law Rep. Vol. 8, No. 8; *Knight* v. *Dorr,* 19 Pick. 48; U. S. Dig. (Sup.) Constitutional Law, 9, 51, 52, 53, 59, 60.

7. The instruction as to the measure of damages was correct. Stat. 1848, c. 85.

8. The testimony introduced by defendants, as to the worthlessness of the Pickard note, was properly admitted to reduce the damages, in case a breach of the bond was found, and as confirmatory of the evidence of a waiver on the part of the plaintiff of the appraisal and assignment of said note.

9. The testimony of witnesses as to Barker's property, or supposed means concealed, or whether or not he had made a false disclosure, or then had property, were properly excluded, a different remedy from an action on the bond being provided by statute. Rev. St. c. 148, § 47, 48.

This case was argued on the third day of May, 1849, and on the sixth day of the same month, the opinion of the Court, SHEPLEY C. J., TENNEY, WELLS and HOWARD Justices, was made known, orally, by

SHEPLEY C. J. — In a suit upon a bond of this character, under the provisions of the statute of 1848, (c. 85, § 2,) entitled " an act additional for the relief of poor debtors," the

Call *v*. Barker.

question of damages becomes an important one. The actual damage is the loss suffered by the non-performance of the condition of the bond, and not the damages occasioned by the particular cause which produced a breach of the condition. Suppose the oath to have been taken before two justices not legally selected, this would not be a performance of the condition, but the amount of damages would not be determined by the amount of the injury sustained by the want of conforming to the law in the selection, but must be assessed on proof of the ability of the debtor to pay.  The amount of damages would not be confined to the loss sustained by the illegal selection of the justices, but would be estimated by the ability of the debtor to have made payment of the debt, or some portion of it.

In the present case, any legal proof, going to show the ability of the debtor to have paid the debt, or a portion of it, was admissible, and should have been taken into consideration by the jury in the assessment of damages.

As the instructions of the presiding Judge limited the proof of damages to the value of the note disclosed by the debtor, and not appraised, the exceptions must be sustained and a new trial granted.